UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KELVIN J. SCHEXNAYDER

VERSUS

CF INDUSTRIES LONG TERM DISABILITY
PLAN FOR IT'S EMPLOYEES, ET AL.

CIVIL ACTION

NO. 07-84-JJB-CN

## RULING ON SUMMARY JUDGMENT

This matter is before the court on cross motions for summary judgment by the Defendant, Hartford Life and Accident Insurance Company (doc. 20) and the Plaintiff, Kelvin J. Schexnayder (doc. 23). Both parties have filed opposition briefs (docs. 27, 29), and Mr. Schexnayder has filed a reply brief (doc. 31). Jurisdiction exists pursuant to 28 U.S.C. § 1331. Oral argument is not necessary.

### Factual Background[1]

CF Industries, Inc. sponsored a Long Term Disability Insurance Program ("the Plan") for its eligible employees, and the Plan was funded by a policy of group long term disability insurance (the "Policy") issued by Continental Casualty Company.[2] Pursuant to an Endorsement, the name of the underwriting company for the Policy

---

[1] Hartford is the only remaining defendant in this case. The Plaintiff dismissed his claims against the Plan because it was fully insured by Hartford. *See* Plaintiff's Memorandum in Support of Summary Judgment (doc. 24) at 3. The Plaintiff dismissed his wrongful termination claims against CF Industries after contracting with CF to reinstate his status to active employment if this court reverses Hartford's denial of disability benefits. *Id.*

[2] Hartford's Statement of Uncontested Material Facts (doc. 21) at ¶ 1.

1

was changed to Hartford Life Group Insurance Company.[3] The parties have stipulated that ERISA governs the long term disability benefit Plan at issue.[4]

The Plaintiff worked for CF Industries as a "chemical operator" from February 1981 until he became injured in May of 2003.[5] The Plaintiff claimed that back and leg pain prevented him from returning to work.[6] On May 29, 2003, when the Plaintiff became disabled, he was an eligible participant under the Plan.[7] In addition, the Social Security Administration found that Plaintiff "became disabled under [SSA] rules on June 7, 2003" which entitled him to monthly disability benefits beginning in December 2003.[8]

After receiving benefits for two years under the Plan, Hartford Life decided to terminate payment of benefits to the Plaintiff under the Plan.[9] At the time of termination, Hartford had sole discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the Plan and Policy.[10]

---

[3] *Id.* at ¶ 2.

[4] Stipulation of Parties in Response to ERISA Case Order (doc. 9) at 1.

[5] Hartford's Response to Plaintiff's Statement of Uncontested Facts (doc. 28) at ¶ 1; Hartford's Statement of Uncontested Material Facts (doc. 21) at ¶ 3.

[6] Hartford's Statement of Uncontested Material Facts (doc. 21) at ¶ 6.

[7] *Id.* at ¶ 3.

[8] *Id.* at ¶ 19.

[9] Plaintiff's Statement of Uncontested Facts (doc. 25) at ¶ 11; Hartford's Response to Plaintiff's Statement of Uncontested Facts (doc. 28) at ¶ 11.

[10] Hartford's Statement of Uncontested Material Facts (doc. 21) at ¶ 4.

Under the language of the policy, "disability" means "injury or sickness causes physical or mental impairment to such a degree of severity that You are: (1) continuously unable to perform the Material and Substantial Duties of your Regular occupation; and (2) not working for wages in any occupation for which You are or become qualified by education, training, or experience."[11] After the monthly benefit has been payable under the policy for twenty-four months, "disability" means injury or sickness of such a severity that You are: "(1) continuously unable to engage in *any* occupation for which You are or become qualified by education, training, or experience; and (2) not working for wages in any occupation for which You are or become qualified by education, training or experience."[12]

On October 19, 2004, Hartford's Medical Advisory Group physician concluded that the plaintiff could be "employed full-time at Light demand work as defined by the US Department of Labor Dictionary of Occupational Titles."[13] By letter dated November 2, 2004, Hartford informed the Plaintiff that his 24 month occupation period would end on November 25, 2005, and the current medical and vocational documentation did not support that he remained disabled from *any* occupation at that time.[14] In November of 2005, Hartford decided to extend the Plaintiff's benefits

---

[11] *Id.* at ¶ 11.

[12] *Id.* (emphasis added).

[13] *Id.* at ¶ 24.

[14] *Id.* at ¶ 26.

3

Case 3:07-cv-00084-JJB-CN   Document 33   04/02/08   Page 3 of 20

as they continued to investigate his alleged disability.[15]  In December 2005, Hartford conducted an employability assessment which identified three occupations which would match the plaintiff's "education, training, work history, and physical capabilities.[16]"  Hartford then notified the Plaintiff that as of January 31, 2006, no further benefits would be paid under the Policy because "medical and vocational documentation in Plaintiff's file [did] not support that he remains disabled from any occupation."[17]  The Plaintiff appealed this finding,[18] and Hartford upheld the termination of his long term disability benefits because the Plaintiff was "functionally capable of performing the occupations identified on the employability analysis, each of which requires only a sedentary level of exertion."[19]

The Plaintiff contends that he suffers from degenerative disc disease, epidural lipoma, disc herniation, carpal tunnel syndrome, bilateral ulnar neuropathy, and extreme hyperesthesias.[20]  The Plaintiff claims that his physical condition limits his activities in terms of "lifting, sitting, walking, or standing."[21]  The Plaintiff asserts that

---

[15] *Id.* at ¶ 30.

[16] *Id.* at ¶ 35.

[17] *Id.* at ¶ 35.

[18] *Id.* at ¶ 36.

[19] *Id.* at ¶ 39.

[20] Plaintiff's Statement of Uncontested Facts (doc. 25) at ¶ 7.

[21] *Id.* at ¶ 22.

his physical condition prevents him from working, and he claims evidence from his doctors supports this conclusion.[22]

## Parties' Arguments

### Plaintiff's Argument

The Plaintiff seeks reinstatement of his long-term disability benefits from Hartford Life and Accident Insurance Company. Mr. Schexnayder contends that Hartford's termination of benefits was based on factual conclusions contrary to the evidence. Mr. Schexnayder asserts that the reports and medical records from treating physicians show that he is unable to work full time at any job, and as a result, he meets the definition of disability under the Hartford Plan. The Plaintiff argues that Hartford has abused its discretion by terminating his benefits under the Plan.

### Defendant's Argument

Hartford Insurance Company contends that the termination of benefits was supported by substantial evidence in the administrative record, and as a result, the administrator's decision was not an abuse of discretion. The Defendant argues it is entitled to summary judgment and attorney fees because it did not abuse its discretion in finding that Plaintiff was not disabled under the terms of the Plan.

---

[22] *Id.* at ¶ 17.

Case 3:07-cv-00084-JJB-CN    Document 33    04/02/08    Page 5 of 20

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. Rule Civ. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, as it does here, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id*. The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id*.

Although this Court considers the evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991), *cert. denied*, 507 U.S. 1051. If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the

non-moving party, summary judgment will be granted for the non-moving party. *Celotex*, 477 U.S. at 322; *see also*, Fed. Rule Civ. P. 56(c).

## Analysis

I. **Standard of Review**

    A. **Appropriate Standard**

If a benefit plan gives discretion to an administrator or fiduciary, the "abuse of discretion" standard is appropriate in determining if the administrator was correct in denying benefits under the plan. *Pierre v. Connecticut General Life Ins. Comp.*, 932 F.2d 1552, 1562 (5th Cir. 1991). In this case, Hartford Life Group Insurance was delegated sole discretionary authority to determine the Plaintiff's eligibility for benefits.[23]

In the ERISA context, the "abuse of discretion" standard is synonymous with an "arbitrary and capricious" standard. *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,* 168 F.3d 211, 214 (5th Cir. 1999). An arbitrary decision is one "without a rational connection between the known facts and the decision or between the found facts and the evidence." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan,* 97 F.3d 822, 828 (5th Cir. 1996). Despite the synonymity of the two standards, the Fifth Circuit has continuously applied the abuse of discretion standard in the ERISA context. *Pierre,* 932 F.2d 1552, 1562; *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d

---

[23] Memorandum in Support of Motion for Summary Judgment of Hartford (doc. 22) at 11, n. 5.

7

287, 296 (5th Cir. 1999); *Gothard v. Metropolitan Life Ins. Co.*, 491 F.3d 246, 249 (5th Cir. 2007).

The law requires substantial evidence to support the decision of an administrator to terminate disability benefits. *Meditrust Fin. Servs. Corp*, 168 F.3d at 215. Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Deters v. Sec'y of Health, Educ. and Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986). When reviewing the administrator's decision, the court may only consider the evidence made available to the administrator before the lawsuit was filed. *Vega,* 188 F.3d at 300. Thus, in this case, the Court will only analyze that evidence available to the Defendant at the time the Plaintiff's benefits were terminated.

### B. Conflicts of Interest

At least a minimal conflict of interest exists when the plan fiduciary serves as both the administrator and insurer of the plan. *Robinson v. Aetna Life Ins. Co.,* 443 F.3d 389, 395 (5th Cir. 2006). ERISA defines a fiduciary as one who "exercises discretionary authority or discretionary control respecting management of a plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. §1002(21)(A)(I). Where a conflict of interest exists, the court will give less deference to the administrator's decision. *Vega,* 188 F.3d at 297. The abuse of discretion standard does not change, but the court will apply a "sliding

scale" standard which gives less deference to the conflicted administrator's decision. *Id.* at 298-299. Under the "sliding scale" standard, the administrator's decision is entitled to some deference, but this deference is lessened to the degree necessary to neutralize any untoward influence from the conflict. *Id.* at 296.

### C. Application of the Standard

Plaintiff has alleged a conflict of interest exists because the Defendant is both the administrator and insurer of the Plan and, therefore, benefits from denying the claim.[24] Hartford acknowledges it has "sole discretionary authority to determine Plaintiff's eligibility for benefits and to interpret the terms and provisions of the plan."[25] A conflict of interest exists because Hartford, as administrator and insurer of the disability plan, potentially benefits from every denied claim. Thus, the Court will evaluate Hartford's decision to terminate Mr. Shexnayder's benefits under an abuse of discretion standard, but will give less deference to that decision because a conflict exists pursuant to the sliding scale.

## II. Did Hartford Abuse Its Discretion?

### A. Social Security Administration's Finding of Disability

The Social Security Administration found Mr. Shexnayder disabled under the

---

[24] Memorandum in Support of Plaintiff's Motion for Summary Judgment (doc. 24) at 3.

[25] Memorandum in Support of Motion for Summary Judgment of Hartford Life (doc. 22) at 2.

9

SSA rules on June 7, 2003.[26] Plaintiff argues the importance of this evidence because the SSA is an impartial federal government agency which uses a similar standard to determine eligibility for disability benefits.[27] Conversely, Defendant claims to be unbound by the SSA determination because the analysis of entitlement for Social Security benefits is different than the entitlement analysis under an ERISA plan.

    The Court agrees with Plaintiff that the SSA determination is relevant, but does not consider the determination binding. Although Social Security determinations are not binding upon plan administrators, they are "relevant and instructive" in a Court's determination of whether a plan administrator acted arbitrarily or capriciously. *Gellerman v. Jefferson Pilot Fin. Ins. Co.*, 376 F.Supp.2d 724, 735 (S.D. Tex. 2005) (noting that "no court has held that an SSA determination is completely irrelevant").

---

[26] Hartford's Statement of Uncontested Material Facts (doc. 21) at ¶ 19.

[27] Disability Benefits Plan standard: "After the *Monthly Benefit* had been payable for 24 months, "*Disability*" means that *injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
    1. continuously unable to engage in *any occupation* for which *You* are or become qualified by education, training or experience; and
    2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience .
*See* Memorandum in Support of Motion for Summary Judgment of Hartford Life (doc. 22) at 5.

    The Social Security Administration's standard for disability is a five step process, the fifth step stating: "We consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to *other work*, we will find that you are not disabled. If you cannot make an adjustment to *other work*, we will find that you are disabled." 20 C.F.R. § 404.1520.

10

Case 3:07-cv-00084-JJB-CN    Document 33    04/02/08    Page 10 of 20

Using a standard similar to the Hartford Plan, the SSA found Mr. Shexnayder incapable of performing *other work*; whereas, the Defendant found Plaintiff capable of performing three other jobs. The Court also considers the fact that the Defendant requested overpayment refunds from the Mr. Shexnayder after the SSA found him incapable of performing any job, and he repaid those funds without hesitation. Although the SSA determination is not binding, the Court finds this independent determination relevant in determining whether Hartford's denial of long-term disability benefits was arbitrary and capricious.

    **B.**    **Medical Evidence**

The Defendant argues its decision to terminate Mr. Shexnayder's disability benefits was based on substantial evidence in its possession at the time the decision was made.[28] Particularly, Hartford based its decision on the results of a Functional Capacity Evaluation (FCE), performed by a physical therapist who was hired by Hartford. The results of that test yielded an opinion that Mr. Shexnayder "would likely" be able to work full-time. Hartford further based its decision to terminate Plaintiff's benefits on the opinion of Dr. Marion. Dr. Marion opined that Mr. Shexnayder "is currently capable of performing full time work that is primarily seated in nature with the flexibility to reposition as needed and may require occasional lifting

---

[28] Memorandum in Support of Motion for Summary Judgment of Hartford (doc. 22) at 13.

11

up to 10 pounds."²⁹  Dr. Marion did not physically examine Mr. Shexnayder, but formed an opinion by speaking with his examining physicians and reviewing the results of their medical records.³⁰

Hartford also hired Dr. Mattin to form an opinion as to Mr. Shexnayder's ability to perform *any job*.  Dr. Mattin opined that Plaintiff "retains the capacity to be employed full-time at light demand work as defined by the US Department of Labor Dictionary of Occupational Titles."³¹  Dr. Mattin did not examine Plaintiff, but formulated his opinion by reviewing medical records of Plaintiff's examining physicians, Dr. Landreneau and Dr. Cavalier, and speaking with those physicians.³²

Following the receipt of Dr. Mattin's report, Hartford's rehabilitation case manager conducted a "Vocational Any Occupancy Assessment," identifying three alternative occupations that Mr. Shexnayder could perform, given his "age, current level of education, work history and level of function ability."³³  Hartford asserts that the evidence is substantial to support a decision to terminate Mr. Shexnayder's disability benefits, and it argues that the decision must be upheld even if the record

---

²⁹ Memorandum in Support of Plaintiff's Motion for Summary Judgment (doc. 24) at Exh. L.

³⁰ *Id.* at 6, Exh. L.

³¹ Memorandum in Support of Motion for Summary Judgment of Hartford (doc. 22) at 7.

³² *Id.*

³³ *Id.* at 7.

12

Case 3:07-cv-00084-JJB-CN   Document 33   04/02/08   Page 12 of 20

contains conflicting evidence.[34]  Where conflicting medical evidence exists in the record, Hartford claims the administrator has the authority to choose between the evidence without giving more weight to the claimant's treating physician than its own consulting physician.[35]

Plaintiff provides conflicting medical evidence and claims the administrative record contains overwhelming evidence that he suffers from degenerative disc disease, carpal tunnel, and other conditions, all of which cause debilitating pain.  Mr. Shexnayder was examined by Dr. Morris and found to be "totally medically disabled."[36]  Dr. Cavalier also examined Mr. Shexnayder and opined that [he] was "totally disabled because of his back, neck, and peripheral nerve issues" and not allowed to work.[37]  Finally, Dr. Landreneau examined Mr. Shexnayder and found him to be "completely disabled from his back, neck, and peripheral nerve issue" and unable to work due to risk of further injury.[38]  Based on this medical evidence, Plaintiff asserts that Hartford arbitrarily ignored the reliable medical evidence of plaintiff's disability, particularly the evidence from his *treating* physicians.

---

[34] *Id.* at 13, *citing Vega*, 188 F.3d at 299; Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 215 (5th Cir. 1999); Sweatman, 39 F.3d 601-603.

[35] *Id.* at 14, *citing Black & Decker v. Nord,* 123 S.Ct. 1965 (2003).

[36] Memorandum in Support of Plaintiff's Motion for Summary Judgment (doc. 24) at 4, Exh. C.

[37] *Id.* at 4, Exh. D.

[38] *Id.* at 5, Exh. G.

13

Case 3:07-cv-00084-JJB-CN   Document 33   04/02/08   Page 13 of 20

The Court acknowledges that an administrator can choose between conflicting medical evidence in the record. However, although there is no treating physician preference in the ERISA context, an administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Mr. Shexnayder's treating physicians found him disabled with chronic degenerative disc disease, carpal tunnel syndrome, and spinal stenosis.[39] In addition to these objective medical findings, Mr. Shexnayder suffers from chronic pain in his back and anterior thighs that is increased by movements and activities.[40] Hartford found Mr. Shexnayder's complaints of pain to be subjective and "not consistent" with the objective findings. However, Dr. Feinberg conducted an MRI on Plaintiff and found evidence of laminectomary and significant stenosis in the lumbar spin,[41] which corroborates Mr. Shexnayder's complaints of pain. Dr. Morris, Plaintiff's treating physician, found evidence of elevated spinal fluid protein after conducting a spinal fluid examination.

In addition to physically examining Mr. Shexnayder, his physicians also completed Functional Assessment evaluations provided by Hartford. The Functional Assessment Tools asked the physicians if they felt that Mr. Shexnayder was "capable

---

[39] Memorandum in Support of Plaintiff's Motion for Summary Judgment (doc 24) at Exhs. C, G and L.

[40] *Id.* at Exhs. A, J and L.

[41] *Id.* at Exh. A.

14

Case 3:07-cv-00084-JJB-CN   Document 33   04/02/08   Page 14 of 20

of performing full time work, which involves primarily seated work with flexibility to sit/stand when needed and does not require lifting over 0-30 pounds." Both Drs. Freiburg and Morris indicated that Mr. Shexnayder was not capable of working with the flexibility to stand and the limitation of lifting less than thirty pounds. Dr. Cavalier also responded to the Functional Assessment Tool provided by Hartford, noting that Mr. Shexnayder *was* capable fo performing full time seated work with flexibility to sit or stand when needed. However, as noted by Dr. Cavalier, he only examined Mr. Shexnayder on one occasion in 2004. Drs. Freiberg, Landreneau and Morris evaluated Mr. Shexnayder on many occasions and in 2005, found him incapable of performing full seated work with flexibility to sit or stand when needed.[42]

Hartford hired two doctors, Dr. Mattin and Dr. Marion to analyze the medical records provided by Plaintiff's examining physicians. Based on the medical evidence, Drs. Mattin and Marion found Plaintiff capable of performing sedentary work. The Functional Capacity Evaluation suggested by Dr. Freiburg and performed by a physical therapist found Mr. Schexnayder capable of performing "medium work" with a physical demand of moving objects 10 lbs. to 20 lbs. constantly.[43] Despite this finding, the test administrator noted as an "additional comment" that:

> Patient vocalized pain and burning sensation in bilateral hands and forearms, left elbow, left lumbar spine, and bilateral anterior thighs during all testing procedures. His pain levels rose from initial rating of

---

[42] *Id.* at Exhs. B, E and J.

[43] *See* H-0319.

15

8 of 10 (on a 0 to 10 point scale) to 9 3/4 of 10 by completion of all tests.[44]

Hartford consistently reiterates the importance of the FCE test results and the fact that it was suggested by Mr. Shexnayder's physician. However, Hartford failed to consider the fact that Mr. Shexnayder was in considerable pain during the examination. Accounts of pain cannot be ignored. *Audino v. Raytheon Co. v. Short Term Disability Plan*, 129 Fed. Appx. 882, 885 (5th Cir. 2005).

Taking into consideration that Hartford is the administrator and insurer of the disability benefits plan, the Court finds Hartford abused its discretion in denying Mr. Shexnayder disability benefits. Mr. Shexnayder's pain is a subjective disability which is substantiated by the objective medical evidence of his examining physicians. Although pain cannot always be objectively quantified, Mr. Shexnayder's pain is corroborated by medical evidence finding degenerative disc disease and spinal stenosis and notations of pain in the results of the FCE. The Defendant abused its discretion in discounting the subjective evidence of Plaintiff's pain and the objective evidence corroborating the disability. Hartford's reliance on the FCE and opinions of physicians who did not examine Plaintiff is an abuse of its discretion.

In sum, the Court reviewed the administrative record for an abuse of discretion under the Fifth Circuit's sliding scale. Hartford chose to conduct only file reviews of Mr. Shexnayder's medical evidence until his examining physician suggested an FCE.

---

[44] *See* H-0324.

That FCE found Mr. Shexnayder capable of performing "medium exertion work." However, the medical evidence and opinions of Mr. Shexnayder's examining physicians and his subjective complaints before, during and after testing indicate otherwise. This Court finds that Hartford abused its discretion in terminating Plaintiff's disability benefits.

### III. Attorneys Fees

Both Plaintiff and Defendant seek an award of attorneys' fees and costs. The Plaintiff argues that Hartford acted in bad faith by denying his claim when overwhelming evidence supported a finding of eligibility. Furthermore, Mr. Shexnayder seeks to deter Hartford from future terminations of long-term disability benefits under an ERISA plan by requiring it to pay fees and costs. Conversely, Hartford argues that the Plaintiff is capable of paying the fees because he did not file the action *in forma pauperis*. In addition to Mr. Shexnayder's ability to pay the costs and fees, Defendant argues awarding such costs will deter frivolous cases in the future.

Under ERISA, "the court in its discretion may allow a reasonable attorneys' fee and costs of action to either party." 29 U.S.C. §1132(g)(1). An award of attorneys fees in an ERISA action is purely discretionary. The Court generally considers five factors in deciding whether to award attorneys' fees and costs:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3)

17

whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position.[45]

Applying the first *Bowen* factor, the Court finds that Hartford acted arbitrarily and capriciously in denying the Plaintiff's disability benefits, and as a result, the first factor weighs in favor of the Plaintiff. The evidence clearly establishes that Plaintiff is completely disabled due to degenerative disc disease and spinal stenosis and debilitating pain. Hartford ignored the medical evidence of Mr. Shexnayder's examining physicians and scoured the record for evidence consistent with the outcome which was most financially beneficial for itself. Acknowledging the fact that Hartford is the administrator and insurer of the disability benefit plan, this Court hopes that awarding attorneys' fees and costs will have a deterrent effect in future decisions made by Hartford.

### IV. Breach of Fiduciary Duty

Defendant urges dismissal of Plaintiff's claim that Hartford breached its fiduciary duty under 29 U.S.C. §1132(a)(3).[46] The Defendant asserts that 29 U.S.C. §1104 does not provide a cause of action for a breach of fiduciary duty as administrator of a disability benefits plan, and 29 U.S.C. §1132(a)(3) is an

---

[45] Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980).

[46] Memorandum in Support of Motion for Summary Judgment of Hartford (doc. 22) at 17.

inappropriate provision to seek personal recovery because other equitable relief is available.[47] Hartford continues by arguing that relief is available through §1131(a)(1)(B), thus relief under §1132(a)(3) is inappropriate.

A plaintiff cannot bring a suit for breach of a fiduciary duty when the civil enforcement provision of ERISA provides a possible remedy. *Estate of Bratton v. Nat'l Union Fire Ins. Co.,* 215 F.3d 516, 526 (5th Cir. 2000). The Supreme Court has interpreted § 1132(a)(3) to allow plaintiffs to sue for breach of fiduciary duty only when no other relief is available. *Tolson v. Avondale Indus.*, 141 F.3d 604, 610 (5th Cir. 1998), *citing Variety Corp. v. Howe*, 516 U.S. 489 (1996). Because the Plaintiff has adequate relief in his claim for the improper termination of benefits under §1132(a)(1), relief through § 1132(a)(3) would be inappropriate. *Id.* Accordingly, the Plaintiff's breach of fiduciary duty claim will be dismissed.

**V. Conclusion**

For the reasons set forth above, the Court finds for Plaintiff, Kevin Schexnayder, and against Defendant, Hartford Life and Accident Insurance Company. Accordingly, the Plaintiff's motion for summary judgment (doc. 24) is hereby **GRANTED**, and the Defendant's motion for summary judgment (doc. 22) is **DENIED IN PART**. The Plaintiff's claim for breach of fiduciary duty is hereby **DISMISSED**.

---

[47] *Id. citing Varity Corp. v. Howe*, 516 U.S. 489 (1996).

19

Case 3:07-cv-00084-JJB-CN    Document 33    04/02/08    Page 19 of 20

Hartford is ordered to pay past long term disability benefits retroactive to January 31, 2006 to the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest. Hartford is further ordered to continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Hartford makes an adverse determination of long-term disability consistent with ERISA and the Plaintiff's entitlements under the Plan.

The Plaintiff is entitled attorneys' fees. The Plaintiff shall file a request for attorneys' fees with supporting documentation within 14 days from the date of this order. The Defendant shall have 7 days after the Plaintiff's filing to reply to the Plaintiff's request for attorneys' fees. Costs other than attorneys' fees will be awarded to the Plaintiff according to law. See Fed. R. Civ. Pro. 54(d).

It is so **ORDERED**.

Baton Rouge, Louisiana, April 1, 2008.

_____
JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA